### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____

|  |  |  |  |
|---|---|---|---|
| DAVID ROBERTS and ANGELA ROBERTS, | ) | | |
| | ) | | |
| **Plaintiffs,** | ) | **Civil Action No.** | |
| | ) | **05-40206-FDS** | |
| v. | ) | | |
| | ) | | |
| GEORGE T. CROWLEY d/b/a/ CROWLEY LAW OFFICES, | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

_____

### MEMORANDUM AND ORDER ON MOTION FOR SANCTIONS AND CROSS MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a dispute concerning the disposition of funds at a mortgage closing. Plaintiffs David and Angela Roberts are homeowners who took out a mortgage loan from Ameriquest Mortgage Company. Defendant George T. Crowley was the attorney representing Ameriquest in connection with the loan. Plaintiffs allege that Crowley (1) recorded the mortgage prior to disbursing the full proceeds of the loan in violation of Mass. Gen. Laws ch. 183, § 63B and (2) committed an unfair or deceptive act or practice in violation of Mass. Gen. Laws ch. 93A.

The parties have cross-moved for summary judgment. Plaintiffs have also filed a motion for sanctions against Crowley based on alleged abuse of discovery. For the reasons set forth below, plaintiffs' motion for summary judgment will be denied, and defendant's motion for summary judgment will be granted. Plaintiffs' motion for sanctions will also be denied.

## I.     Statement of Facts

### A.     The August 2004 Mortgage

The following facts are undisputed unless otherwise noted.

Plaintiffs David and Angela Roberts are residents of Leominster, Massachusetts.  They obtained a home mortgage loan from Ameriquest Mortgage Company, under which they borrowed $162,000 and granted a mortgage on their home at 56 Benjamin Street in Leominster. Although not clear, it appears that the purpose of the loan was to refinance their existing mortgage.

Ameriquest hired defendant George T. Crowley, an attorney, to represent it in connection with the loan.[1]  The Settlement Statement (Form HUD-1) that Ameriquest provided to plaintiffs before the closing indicated that the bulk of the loan proceeds ($145,274) would be disbursed to Chase Manhattan Mortgage to pay off plaintiffs' prior mortgage.  The Settlement Statement indicated that after paying off that mortgage and deducting various closing fees, insurance payments, and taxes, plaintiffs would receive $5,284.59.

The closing occurred on August 24, 2004, but the proceeds were not paid to plaintiffs that day.  Shortly after the closing, Crowley received a payoff statement from Chase Manhattan that revealed plaintiffs actually owed $148,382.22 on the prior mortgage.  The precise reason for the difference ($3,108.22) is not clear from the record.

On August 31, 2004, Ameriquest paid the loan proceeds to Crowley, after deducting $6,571.41 in various fees and charges.  It wired the remaining $155,428.59 into Crowley's

---

[1]  Crowley did not actually attend the closing; instead, another attorney acting as a "subcontractor" handled the transaction.  Plaintiffs apparently did not retain counsel to represent them at closing.

account that day.

On September 1, 2004, Crowley issued a check payable to Chase Manhattan in the amount of $148,382.22 to pay off the prior mortgage.  He also issued two checks payable to the City of Leominster for $1,366 and $418 and a check payable to Fidelity National Title Insurance Company for $136.50.  Finally, Crowley deducted his own fee of $2,103.50.  The remaining portion of the loan—$3,022.37—was disbursed to the plaintiffs on September 1, 2004.  It does not appear that any new Settlement Statement was ever created.[2]

Plaintiffs contend that Crowley did not obtain their authorization to vary the terms of the Settlement Statement, which indicated they were to receive $5,284.59.[3]  Plaintiffs did not, however, submit any evidence in support of that contention.  The only evidence on point is from the deposition of Crowley, who testified as follows:

Q.    Do you usually ask the borrowers to sign a waiver that allows you to disburse the funds at variance with the Settlement Statement?

A.    There's a very specific form that states if the payoff amount on the mortgage or anything that's on title, any liens, if those amounts are insufficient, they authorize our office to change the Settlement Statement to pay off any liens that are on the title.

Q.    Do you know if that was requested by the borrowers in this transaction?

A.    It's included in every loan package.  In my file I did not find a signed copy of it.

Q.    Do you know if an unsigned copy was presented to them at all?

---

[2]  Assuming all other fees indicated on the original Settlement Statement remained unchanged, a $3,108.22 increase in plaintiffs' Chase Manhattan obligation should have resulted in a subsequent payment of $2,176.37 to plaintiffs, not $3,022.37.  The record does not reveal the reason for the discrepancy.

[3]  Plaintiffs do not dispute, however, that the actual Chase Manhattan mortgage obligation was $148,382.22.

3

A.      I'm sure that an unsigned copy was in the closing package as it's
        customary for us to conduct our business that way.  Not being at the
        closing, I can't say with a hundred percent certainty that it was presented
        to them.

(Crowley Dep. at 31-32).

On September 8, 2004, Crowley recorded the mortgage in the Registry of Deeds.

Plaintiffs immediately fell behind on their mortgage payments.  Less than three months later, on

December 2, 2004, plaintiffs received a Notice of Intention to Foreclose from Ameriquest.

Plaintiffs contend that at the time the foreclosure notice was sent by Ameriquest, the alleged

deficiency in their loan proceeds ($2,262.22) was greater than the arrearage owed to Ameriquest.

Ultimately, plaintiffs filed for bankruptcy to avoid foreclosure.

**B.      Filing of the Present Action**

On October 25, 2005, plaintiffs filed the present action against Ameriquest Mortgage

Company and George Crowley (doing business as Crowley Law Offices), alleging fraud and

violation of various federal and state statutes.  The only counts against Crowley are Count II

(violation of Mass. Gen. Laws ch. 183 § 63B) and Count V (violation of Mass. Gen. Laws ch.

93A).

**C.      Facts Relevant to Motion for Sanctions**

In March 2006, this Court ordered that fact discovery be completed by September 30,

2006.  Upon Ameriquest's motion, this deadline was later extended to December 15, 2006.  In a

status conference held on December 20, this Court granted plaintiffs until January 12, 2007, to

comply with all outstanding discovery requests, as plaintiffs had failed to comply with various

discovery obligations in the previous year.

4

At a status conference held January 16, the Court learned that plaintiffs had still failed to comply with numerous discovery requests and court orders. The Court dismissed Ameriquest from the action on that date as a discovery sanction. At a status conference held on March 15, 2007, this Court ordered that all fact discovery in the case was to be completed by April 30, and that all dispositive motions were to be filed by May 21, 2007.

Counsel for plaintiffs sent a letter to Crowley's counsel on April 11 seeking a date to depose Crowley. This letter was not accompanied by a formal Notice of Deposition, and a proposed deposition date was not included in the letter. The Robertses were deposed on April 12, 2007. At that deposition, the parties agreed to depose Crowley on April 24 or April 30. Those dates, however, were contingent on Crowley's availability.

On April 20, plaintiffs' counsel sent a Notice of Deposition and noticed the deposition for April 30 (the very last day on which fact discovery was permitted). The notice was accompanied by a letter that suggested the deposition take place at Crowley's office. On April 24, Crowley's counsel notified plaintiffs' counsel that Crowley was unavailable on April 30. In the same letter, Crowley's counsel agreed that plaintiffs could take Crowley's deposition on May 4. On April 27, plaintiffs filed a motion for extension of time until May 21 to complete discovery depositions.

Crowley's deposition was taken on May 4. The Court denied plaintiffs' motion to extend discovery on May 15. Plaintiffs filed the present motion for abuse of discovery sanctions against Crowley on May 21, asking for a grant of default judgment in their favor or, in the alternative, an additional four days to file dispositive motions. Plaintiffs filed the present motion for summary judgment on May 25, 2007.

## II.   Analysis

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990).

As noted, plaintiffs assert two claims against Crowley:  an alleged violation of Mass. Gen. Laws ch. 183, § 63B and an alleged violation of Mass. Gen. Laws ch. 93A, § 9.  In their summary judgment pleadings, plaintiffs suggest for the first time that the Settlement Statement is a contract between plaintiffs and Ameriquest, enforceable against Crowley as Ameriquest's agent, and further suggest that they may have enforceable rights against Crowley under the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601 *et seq.*  No such theories were pleaded in the complaint, and plaintiffs do not articulate their theories with any precision9.[4]  It hardly bears mentioning that a plaintiff cannot raise a theory of liability for the first time in a memorandum in support of a motion for summary judgment.  Accordingly, the Court will address only the two theories actually raised by the complaint.

---

[4] For example, in their memorandum in support of their motion for summary judgment, plaintiffs state cryptically that "the Settlement Statement . . . in this case stands for its identification of the contract terms as between plaintiffs and defendant Crowley."  (Pl. Mem. at 7).

6

A.      **Mass. Gen. Laws ch. 183, § 63B**

Mass. Gen. Laws ch. 183, § 63B (more commonly known as the "good funds statute")

states:

> No mortgagee who makes a loan to be secured by a mortgage or lien on real estate located in the commonwealth in conjunction with which, a mortgage deed evidencing the same is to be recorded in a registry of deeds or registry district in the commonwealth, shall deliver said deed or cause the same to be delivered into the possession of such registry of deeds or registry district for the purpose of the recording thereof unless prior to the time said deed is so delivered for recording, said mortgagee has caused the full amount of the proceeds due to the mortgagor pursuant to the settlement statement relevant thereto given [*sic*] to said mortgagor or in the instance of any such loan in which the full amount of the proceeds due to the mortgagor pursuant to the terms thereof are not to be advanced prior to said recording, so much thereof as is designated in the loan agreement, to be transferred to the mortgagor, the mortgagor's attorney or the mortgagee's attorney in the form of a certified check, bank treasurer's check, [*sic*] cashier's check or by a transfer of funds between accounts within the same state or federally chartered bank or credit union, or by the funds-transfer system owned and operated by the Federal Reserve Banks, or by a transfer of funds processed by an automated clearinghouse; provided, however, that neither the mortgagor's attorney or the mortgagee's attorney shall be required to make disbursements or deliver said proceeds to the mortgagor in such a form . . . .

*Id.*  Plaintiffs contend that Crowley violated the statute because he recorded the mortgage without

paying the "full amount of the proceeds" (that is, $5,284.59) to plaintiffs.  Defendant contends

that § 63B does not provide for a private right of action, and even if it does he complied with the

plain language of the statute.

It is somewhat doubtful whether § 63B creates an implied private right of action.  The

only reported decisions that have discussed § 63B have not addressed the issue.  *See Horvath v.*

*Adelson, Golden & Loria, P.C.*, 2000 WL 33159239 *1, *1 & n.1 (Mass. Super. 2000); *In Re*

*Patchell*, 336 B.R. 1, 10 (Bkrtcy. D. Mass. 2005).[5]

In general, "a judicially drawn implication of a private right of action from a statute that omits such a remedy occurs where the statute evidences a special legislative concern for an identifiable interest of a group of which the plaintiff is a member, and not merely a concern for the public generally, and if the injury falls within the area of concern." *Gottlin v. Herzig*, 40 Mass. App. Ct. 163, 167 (1996). The statute here "appears to have been enacted in response to the intolerable problems that arose when it was learned that a now-defunct lender, Abbey Financial Inc., which filed for bankruptcy protection, had failed to fund several mortgage loans." *In re Patchell*, 336 B.R. 1, 10 (D. Mass. 2005), citing *Horvath*, 2000 WL 33159239 at *1 & n.1. The statute appears intended to ensure that borrowers are not placed in the unfortunate situation of having a mortgage recorded against their property without receiving the benefit of the proceeds of the loan. Here, by contrast, all of the loan proceeds went either to plaintiffs directly, to pay off existing obligations of plaintiffs, or to pay expenses associated with the loan. Even if a right of action exists in some circumstances, it is doubtful that § 63B was intended as a catch-all statute designed to provide a remedy for every dispute over a disbursement at a mortgage closing. It is also doubtful that § 63B provides a right of action against attorneys representing lenders, as opposed to the lenders themselves.

In any event, assuming that a private right of action exists, it does not appear that

---

[5] The *Patchell* court (the only authority to actually consider a pleaded § 63B claim) dismissed the claim on a separate ground, but suggested that the plaintiff might amend the complaint to reintroduce the claim. *Patchell*, 336 B.R. at 10. *See also In re Franchitto*, 448 Mass. 1007, 1008 (2007) (remarking that a Board of Bar Overseers hearing committee had found that the disciplined lawyer "violated the good funds statute, [Mass. Gen. Laws ch.] 183, § 63B.").

defendant Crowley violated the statute.  The statute is worded awkwardly, to say the least.[6]  It appears, however, that it is intended to be read in substance as follows:

(1) No mortgagee who makes a loan to be secured by a mortgage or lien on real estate,

(2) "in conjunction with which, a mortgage deed evidencing the same is to be recorded,"

(3)  shall deliver the deed for recording (or cause the deed to be delivered for recording)

(4)  unless "prior to the time said deed is so delivered for recording,"

(5) "said mortgagee has caused"

(a) "the full amount of the proceeds due to the mortgagor pursuant to the settlement statement relevant thereto given [*sic*] to said mortgagor" or

(b) "in the instance of any such loan in which the full amount of the proceeds due to the mortgagor pursuant to the terms thereof are not to be advanced prior to said recording, so much thereof as is designated in the loan agreement,"

(6) to be transferred to

(a) the mortgagor,

(b) the mortgagor's attorney, or

(c) the mortgagee's attorney,

(7) in one of six identified forms of payment (certified check, bank treasurer's check, etc.).[7]

---

[6] The statute consists of a single run-on sentence of more than 250 words, without clearly-stated subparts. In addition, it appears that words may be missing at two different points.

[7] Arguably, the words "to be" should be inserted before the word "given," and the statute given a  different construction:

(5) "said mortgagee has caused the full amount of the proceeds due to the mortgagor pursuant to the settlement statement relevant thereto"

As noted, plaintiffs contend that they did not receive "the full amount of the proceeds due to the mortgagor pursuant to the settlement statement," because the settlement statement indicates that they were due $5,284.59, and they only received $3,022.37.  There is no question that the loan proceeds were transferred by Ameriquest to Crowley prior to the recording of the deed.[8]  The question, however, is whether "the full amount" was transferred.

The phrase "the full amount of the proceeds due to the mortgagor" cannot simply mean "the amounts left over from the loan that are to be disbursed to the mortgagor."  Under that construction, the statute would be unduly narrow and, indeed, make little sense.  The point of the statute was to ensure that mortgage loans were completely funded, not to protect only that portion of a loan (if any) that is directly paid to a borrower.  The majority of home mortgage loan proceeds are used to purchase property or refinance existing debt, and involve substantial disbursements to sellers or prior lenders.  Indeed, many home mortgage loans do not involve any

---

(a) "[to be] given to said mortgagor" or

(b) "in the instance of any such loan in which the full amount of the proceeds due to the mortgagor pursuant to the terms thereof are not to be advanced prior to said recording, so much thereof as is designated in the loan agreement," to be transferred to

(i) the mortgagor,

(ii) the mortgagor's attorney, or

(iii) the mortgagee's attorney . . .

The Court rejects this approach on the grounds that it (1) would require the addition of words to the statute that were not enacted by the legislature, and (2) would produce an anomalous result, in that partial-disbursement loans would be treated significantly different than full-disbursement loans, for no apparent reason.

[8] Plaintiffs do not dispute that Ameriquest deducted its fees and wired the adjusted proceeds ($155,428.59) to defendant on August 31, 2004.  On September 1, defendant paid off the Chase Manhattan mortgage, made various taxes and title insurance payments, and deducted his own fees.  Defendant was thus undisputedly in possession of the loan proceeds seven days before he recorded the mortgage on September 8.  In fact, by September 8 defendant had disbursed (or taken as his agreed-upon fee) *all* of the money sent to him by Ameriquest.

cash disbursements to borrowers at all.  Accordingly, the Court construes the quoted phrase to include *all* amounts due *either* directly to the mortgagor *or* to be paid on behalf of the mortgagor—such as disbursements to a prior lender to pay off a mortgage.[9]

That amount—that is, the full amount due by Ameriquest to be paid to the plaintiffs or to other parties on plaintiffs' behalf—was transferred by Ameriquest to Crowley on August 31, 2004.  Crowley was the "mortgagee's attorney" within the meaning of the statute.  Crowley did not record the mortgage until September 8.  Accordingly, neither Crowley nor Ameriquest violated the statute.

It is worth noting that if Crowley had paid $5,284.59 to plaintiffs and $145,274 to Chase Manhattan, as the settlement statement contemplated, the prior mortgage would not have been paid off or discharged.  Plaintiffs apparently assume that Ameriquest or Crowley should have simply paid off that mortgage out of their own funds, but do not explain why such a result was required.

In any event, defendant acted in accordance with § 63B.[10]  Even viewing all facts in the light most favorable to the plaintiffs, summary judgment will be granted in favor of the defendant.

---

[9] The phrase "the settlement statement relevant thereto" cannot refer only to the actual physical settlement statement as executed by the parties, without any modifications to the settlement statement as to which the parties may have agreed.  It appears that the latter definition is the more sensible construction, as otherwise the mortgagee could not record the deed even if the parties had agreed that the settlement statement was erroneous and required modification.

The Court need not consider whether the parties in this case actually agreed to modify the settlement statement.  As noted, defendant Crowley testified that the normal practice of his office was to have the borrowers execute a waiver at the closing that permits disbursements at variance with the settlement statement, in order to pay off a mortgage or discharge a lien.  No such waiver was in Crowley's file, and defendant has not submitted any such record to the Court.  Plaintiffs, however, have not denied executing such a waiver.

[10] *Compare Patchell*, 336 B.R. at 10 (holding that § 63B prohibits the recording of a mortgage only until " . . . the loan proceeds had at least *been received by the closing attorney*") (emphasis added) (citing *Horvath*, 2000 WL 33159239 at n.1 (characterizing § 63B in dicta)).

B.       **Mass. Gen. Laws ch. 93A**

Before bringing suit under Mass. Gen. Laws ch. 93A § 9, a plaintiff must tender to the

defendant a "written demand for relief, identifying the claimant and reasonably describing the

unfair or deceptive act or practice relied upon." *Id.*, § 9(3).  The statutory notice requirement "is

not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" *Rodi v. Southern New*

*England School of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (emphasis added) (quoting *Entrialgo v.*

*Twin City Dodge, Inc.*, 368 Mass. 812, 813 (1975)).  A failure to send the required demand letter

is thus fatal to a claim brought under § 9.  *See, e.g., City of Boston v. Aetna Life Ins. Co.*, 399

Mass. 569, 574 (1987).

Plaintiffs admit that "no demand letter was sent the defendants in this case."  (Pl. Mem. at

6).  Nonetheless, plaintiffs cite two Massachusetts cases dealing with ch. 93A demand letters in an

attempt to avoid dismissal:  *Tarpey v. Crescent Ridge Dairy, Inc.*, 47 Mass. App. Ct. 380 (1999),

and *Fredericks v. Rosenblatt*, 40 Mass. App. Ct. 713 (1996).

Neither case is applicable here.  In *Tarpey*, the plaintiffs initiated a products liability action

in July 1991 that did not include a ch. 93A claim.  The plaintiffs then served a demand letter in

September 1992, followed by an amended complaint adding a ch. 93A claim.  *Id.* at 391-92.  In

*Fredericks*, the contested issue was the sufficiency of the demand letter actually sent, not the

failure to send a demand letter at all.  *Id.* at 715-17.

Plaintiffs here failed to send the required demand letter, and therefore failed to meet a

jurisdictional prerequisite to suit.  Summary judgment for the defendant will accordingly be

granted on the claim under chapter 93A .[11]

### C.    Motion for Sanctions

The decision as to whether discovery sanctions are warranted is "within the sound discretion of the trial court." *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 6 (1st Cir. 2005) (*quoting U.S. v. Soto-Beniquez*, 356 F.3d 1, 30 (1st Cir. 2004)).  The factors the Court may consider in imposing and determining sanctions include "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the level of deliberateness of the violations, mitigating excuses, prejudice to the opposing party, and adequacy of lesser sanctions." *Malloy v. WM Specialty Mortg. LLC*, 512 F.3d 23, 26 (1st Cir. 2008).

Plaintiffs seek discovery sanctions here on the grounds that defendant failed to attend the deposition noticed for April 30, 2007; that the Court refused to grant an extension of time to complete discovery; that the deposition finally occurred on May 4; that the transcript was not prepared until May 18, "leaving too little time to prepare a summary judgment by the May 21, 2007 time limit"; and that plaintiff was forced to file its summary judgment motion four days late as a result.

Sanctions against defendant under the circumstances are simply not warranted.  Fact discovery in this case began in March 2006.  Plaintiffs repeatedly failed to comply with various Court-ordered discovery deadlines over the next year, and never took defendant's deposition.  On March 15, 2007, the Court extended fact discovery until April 30.  Plaintiffs waited more than a month (until April 20) to notice defendant's deposition, and set that deposition for April 30—the

---

[11] Plaintiffs filed a cross-motion for summary judgment on May 25, four days after the deadline to file dispositive motions.  As defendant's motion for summary judgment will be granted in its entirety, the Court will deem plaintiffs' motion to have been timely filed and will deny it for the same substantive reasons.

very last day discovery was permitted.  This left plaintiffs no margin for error or fallback date if defendant happened to be unavailable on the 30th (as indeed he was).  Defendant was finally deposed on May 4.  After plaintiffs waited more than a year to take the deposition, it was nonetheless quite short; the deposition began at 10:05 a.m. and was concluded at 10:55 a.m., and the transcript is only 34 pages long.

The Court might have stricken Crowley's deposition from the record on the grounds that it was taken outside the discovery deadline.  It has not done so and to the contrary has considered that testimony in its entirety.  As a practical matter, the Court has thus granted plaintiffs a four-day extension of the discovery deadline and a four-day extension of the summary judgment deadline. Under the circumstances, defendant has committed no abuse of discovery, and plaintiffs' motion for sanctions accordingly will be denied.

## III.   Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment is DENIED; defendant's motion for summary judgment is GRANTED; and plaintiffs' motion for sanctions is DENIED.

**So Ordered.**

        /s/   F. Dennis Saylor
        F. Dennis Saylor IV
        United States District Judge

Dated: March 6, 2008